IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**MOHAMED LEMINE M'BARECK**                                                          **PLAINTIFF**

V.                              CASE NO. 5:21-cv-5054

**ALEJANDRO MAYORKAS, as Secretary of
the Department of Homeland Security, in his
official capacity; UR JADDOU, as Director of
USCIS, in her official capacity; and PETER
HAERTLING, as Director of the USCIS New
Orleans Asylum Office, in his official capacity** [1]                      **DEFENDANTS**

### AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDAMUS

### PRELIMINARY STATEMENT

1.  Petitioner, Mohamed Lemine M'Bareck, is a refugee from Mauritania who has been seeking asylum based on race, political opinion, religion, and membership in a particular social group since 2018. Mr. M'Bareck is requesting an initial credible fear interview for his asylum application from the United States Department of Homeland Security ("DHS").

2.  Mr. M'Bareck has been waiting three years for the interview to be scheduled. The delay in scheduling this interview is a violation of non-discretionary statutory requirements. Specifically, the Immigration and Nationality Act ("INA") grants Mr. M'Bareck the right to apply

---

[1] The United States Senate confirmed Ur Jaddou as director of USCIS on July 30, 2021. Under Fed. R. Civ. P. 25(d), Ms. Jaddou is automatically substituted as a party in this case in place of Tracy Renaud, who was acting director of USCIS at the time when Plaintiff filed his original Complaint. Peter Haertling has acknowledged in a filing in this litigation that he is Director of the New Orleans Asylum Office. *See* Doc. 12-2, ¶ 1. Accordingly, he is being substituted as a party in this case in place of "Jane Doe," who was named in the original Complaint as a Defendant in her official capacity as the Director of USCIS New Orleans field office. *See* Fed. R. Civ. P. 15(c)(1)(C) and (c)(2).

1

for asylum, *see* 8 U.S.C. § 1158(a)(1), and the Administrative Procedure Act ("APA") mandates that his application must be adjudicated, *see* 5 U.S.C. § 555(b).

3. A credible fear interview is a necessary step in receiving asylum. The interview will be used to determine whether or not Mr. M'Bareck is a refugee under 8 U.S.C. § 1158. A refugee is a person who no longer resides in their country of nationality, "and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).

4. The credible fear interview is one of the first in many steps of the asylum process. Without such an interview, Mr. M'Bareck is left uncertain as to whether he will have to return to the persecution that awaits him in his home country of Mauritania.

5. Mr. M'Bareck currently resides in Fayetteville, Arkansas.

6. Defendants have failed to meet a basic and nondiscretionary duty to schedule a credible fear interview and adjudicate Mr. M'Bareck's asylum application. A Writ of Mandamus, therefore, is necessary.

7. Defendants have failed to provide a credible fear interview to petitioner within a reasonable time, thereby denying petitioner his statutory right to seek asylum. Relief under the APA, therefore, is necessary.

8. A Writ of Mandamus is appropriate when (1) the party seeking the Writ has no other adequate means to attain the relief desired, (2) the party seeking the Writ has shown a "clear and indisputable" right to the issuance of the writ, and (3) the court concludes that the issuance of

a writ would be the appropriate remedy in this situation. *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380–81 (2004).

9. The APA allows a court to compel an agency to act when a person is "suffering a legal wrong because of agency action." 5 U.S.C. § 702. A failure to act is considered agency action under the APA. 5 U.S.C. § 551(13). The action, which the agency has failed to take, must be a nondiscretionary act that the agency is required to take. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this civil action arises under the Constitution, laws, or treaties of the United States, namely 28 U.S.C. § 1361 ("The Mandamus Act'), the INA, 8 U.S.C. § 1158, the APA, 5 U.S.C. § 551 *et seq.*, and 5 U.S.C. § 701 *et seq.*, and any related regulations.

11. Petitioner seeks a Writ of Mandamus pursuant to 28 U.S.C. § 1361 and the court has jurisdiction to grant such relief under 28 U.S.C. § 1651. This Court has the authority to compel the Defendants to perform the duty of scheduling a credible fear interview for the petitioner, as adjudicating his asylum application is a nondiscretionary duty owed to the Petitioner by the Defendants. 8 U.S.C. § 1158(a)(1); 5 U.S.C. § 555(b).

12. Mr. M'Bareck seeks relief under the APA because the denial of his credible fear interview is considered a final agency action and there has been an exhaustion of all available remedies. Judicial review is warranted when "[a] person [is] suffering a legal wrong because of agency action." 5 U.S.C. § 702. Agency action is defined in 5 U.S.C. § 702(b)(2), by reference to 5 U.S.C. § 551, as a "failure to act." 5 U.S.C. § 551(13). This Court has the power to review the agency's inaction here, because "administrative inaction has precisely the same impact on the

rights of the parties as denial of relief[;] an agency cannot preclude judicial review by casting its decision in the form of inaction rather than in the form of an order denying relief. . . . At some point administrative delay amounts to a refusal to act, with sufficient finality and ripeness to permit judicial review. *Envtl. Defense Fund v. Hardin*, 428 F.2d 1093, 1099–1100 (D.C. Cir. 1970).

13. This Court has personal jurisdiction over the parties.

14. Venue in this judicial district is proper under 28 U.S.C. § 1391(e)(1)(C) because this is an action against officers of the United States in their official capacities, brought in the judicial district where the Petitioner resides, and no real property is involved.

## PARTIES

15. The Petitioner, Mr. M'Bareck, is an individual who resides in Fayetteville, Arkansas. Mr. M'Bareck has applied for asylum in the United States but has not had a credible fear interview scheduled.

16. Defendant Alejandro Mayorkas is the Secretary of DHS, which he oversees in his official capacity. He is charged with the administration and enforcement of the INA, has the authority to determine the refugee status of applicants pursuant to 8 U.S.C. § 1158, and is authorized to delegate such powers and authority to subordinate employees of DHS, including those of the United States Citizenship and Immigration Services ("USCIS"). *See* 8 U.S.C. § 1103(a)(1). Defendant Mayorkas is named in this Complaint in his official capacity only.

17. Defendant Ur Jaddou is the Director of USCIS. USCIS is charged with exercising the DHS's power to adjudicate asylum applications. Defendant Jaddou is sued in her official capacity only.

18.     Defendant Peter Haertling is the Director of the USCIS New Orleans Asylum Office.  The New Orleans Asylum Office is currently exercising jurisdiction over Petitioner's asylum application.  Defendant Peter Haertling is sued in his official capacity only.

## FACTUAL ALLEGATIONS

19.     To apply for asylum, applicants must submit an Application for Asylum and for Withholding of Removal ("Form I-589") to USCIS.  "[I]n the absence of exceptional circumstances, the initial interview of hearing on the asylum application shall commence not later than 45 days after the date an application is filed."  8 U.S.C. § 1158(d)(5)(A)(ii).

20.     Only after Defendants conduct the initial credible fear interview can USCIS issue its decision on an asylum application.  8 U.S.C. § 1158(d)(5)(A)(iii).  A credible fear interview is used to show "'credible fear of persecution' mean[ing] that there is a significant possibility, taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts as are known to the officer, that the alien could establish eligibility for asylum under Section 1158 of this title."  8 U.S.C. § 1225(b)(1)(B)(v).

21.     Mr. M'Bareck is a native and citizen of the Islamic Republic of Mauritania.

22.     Mr. M'Bareck belongs to a caste or social group called the Haratines (slave descendants).  In 1981, slavery was legally abolished in Mauritania but Mr. M'Bareck, born only six years later, grew up in a country with strict *de facto* segregation, servitude, and caste codes.

23.     Mr. M'Bareck used education to escape from poverty.  He eventually worked his way into the President of Mauritania's Cabinet of Advisors.  He then came to the United States as a Fulbright scholar and now resides near the University of Arkansas where he studied.

24.     Before moving to the United States for graduate school, Mr. M'Bareck was a part of Mauritanian President Mohamed Ould Abdel Aziz's cabinet.  Mr. M'Bareck used his position

in government to secretly help human rights organizations, like the Initiative for the Resurgence of the Abolitionist Movement ("IRA"), to organize against the government's lack of action regarding continued slavery and caste codes.

25. The IRA is a human rights group fighting for a true end to slavery in Mauritania that is illegal inside the nation. Its prohibited status in Mauritania is because the government refuses to acknowledge any organization that is fighting for the acknowledgement of slavery as an ongoing issue in the country. The government has wrongly labeled them as a "racist organization" in order to control the nation's preferred narrative and reputation.

26. Mr. M'Bareck is seeking political and religious asylum after speaking out against a dangerous government policy. He has made political statements that Mauritania does not adequately protect people, specifically people called Haratines, who are still considered to be in the caste of ancestrally enslaved people.

27. Specifically, on January 15, 2018, the IRA peacefully protested to condemn the arbitrary detention of its members and other political prisoners. Marchers and peaceful protestors were beaten by the police to silence their voices. Mr. M'Bareck, while in the United States, publically posted his dismay and frustration, writing that he felt "[the police] beat the slave abolitionists as if they were ordered to beat to kill." Mr. M'Bareck posted again frequently the following days sharing his criticism and dismay for the government's handling of slavery and called for positive discrimination (affirmative action) for the Haratines. The following day, Mr. M'Bareck was fired from his job in the Mauritanian presidential administration and the Mauritanian government carried out a public campaign in the Mauritanian press slurring Mr. M'Bareck's reputation, integrity, and credibility.

28. Mr. M'Bareck, who is now officially labeled an enemy of the Mauritanian government, fears that if he returns to Mauritania he will be jailed and tortured, or worse, and that returning would allow the government to accuse and convict him of any offense that they wish.

29. Mr. M'Bareck is especially fearful because of his connection with the IRA. He has seen individuals jailed for fifteen years for mere affiliation with the group, even without publishing written criticisms of the government's abuse. Mr. M'Bareck credibly fears his punishment for public political activism and position would be much worse.

30. Mr. M'Bareck fears that his affiliation, written criticism and previous work under the government will make him a target for political imprisonment and torture. If he returns, the chances of imprisonment and torture are extremely high. In the event of torture, his medical needs would likely go unaddressed, potentially resulting in permanent disability or death. This has occurred to others.

31. Mr. M'Bareck also fears that he could face an immediate death sentence, as others in his country have, for speaking out against the government on social media.

32. Mr. M'Bareck's wife and son, who were present in Mauritania at the time of his posting, were required to be silent and denounce him to avoid punishment by the government. His wife still lost her job as a result of Mr. M'Bareck's statements.

33. Anyone daring to challenge the ongoing servitude and the echoes of the country's recent history of legal slavery is in danger of being charged with blasphemy, as the institution of slavery is protected under a very fundamentalist reading of the Quran.

34. Mr. M'Bareck filed a Form I-589 asylum application on August 16, 2018, within one year of arriving in the United States. *See* 8 U.S.C. § 1158(a)(2)(B). Receipt of his application was acknowledged by USCIS on August 18, 2018.

35. Mr. M'Bareck has not yet had a credible fear interview scheduled by USCIS.

36. Mr. M'Bareck has never applied for asylum before and therefore has never been denied on a previous application. 8 U.S.C. § 1158(a)(2)(C).

37. Mr. M'Bareck has never been and is not in removal proceedings, nor was Mr. M'Bareck in removal proceedings at the time he filed his Form I-589.

38. Since applying for asylum on August 16, 2018, Mr. M'Bareck has not traveled outside of the United States, nor missed an immigration court hearing as he has had no hearings scheduled.

39. Mr. M'Bareck is entitled to be interviewed by a USCIS asylum officer in a non-adversarial manner within a reasonable time. 5 U.S.C. § 555(b).

40. Mr. M'Bareck has yet to receive an interview date for his asylum application. It has been three years since his application was filed. USCIS has failed to comply with its nondiscretionary, statutory duty to adjudicate his application.

41. Mr. M'Bareck has attempted to schedule the interview by applying for an expedited hearing during the Fall of 2018. He also called on February 12, 2021, in an attempt to schedule an interview. He was told that there was nothing to do but wait until further notice.

42. This failure to act has caused Mr. M'Bareck harm. The delay of 1,042 days beyond when his initial interview should ordinarily have been held, *see* 8 U.S.C. § 1158(d)(5)(A)(ii), has put him in a status of legal limbo. Through no failure of his own, Mr. M'Bareck has been delayed in the adjudication of his asylum case, causing a delay in his ability to petition for his family and holding him back to future adjustment of status by what is now approaching three years. The delay has barred him from the advantages that come with asylum including a path to citizenship,

permanent work authorization, and help from a refugee agency located in Fayetteville that is able to serve in many ways people with approved asylums.

43. Mr. M'Bareck has an inherent interest in having his interview conducted and his application adjudicated in an orderly and timely manner as mandated by 5 U.S.C. § 555(b).

44. Defendants' continued failure to timely schedule an asylum interview for the Petitioner has impaired Mr. M'Bareck's family situation and delayed his ability to plan a life in the United States, including enjoying the benefits of asylum status should it be granted.

45. Mr. M'Bareck grew up feeling pain and suffering from the *de facto* segregation he experienced. He was constantly told he would amount to nothing and that his purpose in life was to be a slave to the white Moors. These memories are on replay in his head daily as he awaits the scheduling of his interview. His therapist advises that he is experiencing severe anxiety and depression. Not knowing what will occur in the future has left Mr. M'Bareck paralyzed in confusion and fear, inhibiting him from enjoying life.

### COUNT I – PETITION FOR WRIT OF MANDAMUS

46. Under 28 U.S.C. § 1361 ("The Mandamus Act"), federal district courts are empowered to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Petitioner" only if the defendant owes him a nondiscretionary duty and if there has been an exhaustion of all other avenues of relief. *Heckler v. Ringer*, 466 U.S. 602, 603–04 (1984).

47. Mr. M'Bareck has a statutory right to apply for asylum and to be considered for that relief pursuant to 8 U.S.C. § 1158(a).

48. Defendants in turn have a nondiscretionary duty to schedule an interview and adjudicate his application. *See* 5 U.S.C. § 555(b). These corresponding rights and obligations are clear and unambiguous.

49. Defendants, who have the duty to determine if Mr. M'Bareck legally qualifies as a refugee, have failed to perform their duty. Defendants have discretion in the granting and denying of asylum applications, but have no discretion in whether to process and adjudicate his application in the first place.

50. No other remedy is available to Mr. M'Bareck under the INA for the scheduling of a credible fear interview. Though nothing is required from him, Mr. M'Bareck has gone out of his way to apply for an expedited hearing during the Fall of 2018, and called USCIS on February 12, 2021, in an attempt to schedule an interview – all to no avail.

### COUNT II – REVIEW OF AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT

51. The APA authorizes suit by a person "suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. Agency action is defined in 5 U.S.C. § 702(b)(2) by reference to 5 U.S.C. § 551, defining agency action as a "failure to act." 5 U.S.C. § 551(13).

52. The APA provides relief when an agency has failed to act. Under 5 U.S.C. § 706(1), "[t]he reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed." Such relief is appropriate here because the agency has failed to perform a nondiscretionary act "that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

53. This Court has jurisdiction and authorization to compel agency action that has been "unreasonably delayed" or "unlawfully withheld." 5 U.S.C. § 706(1).

54. This Court should determine that the agency's delay in providing a credible fear interview to Mr. M'Bareck is unreasonable under the six factors articulated in *Telecomms. Research & Action Ctr. v. FCC ("TRAC")*, which are: (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed. *See TRAC*, 750 F.2d 70, 80 (D.C. Cir. 1984).

55. Mr. M'Bareck has no adequate remedy at law and will suffer irreparable harm if his asylum interview is not conducted in a reasonable time. Mr. M'Bareck has exhausted all other options such as requesting an expedited hearing during the Fall of 2018 and calling Defendants in an attempt to schedule the interview himself on February 12, 2021.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner, Mr. M'Bareck, respectfully requests that the Court:

A. Compel Defendants to schedule an initial asylum interview for Mr. M'Bareck within a reasonable time not to exceed 45 days from the date of the Court's order, and to thereafter adjudicate his asylum application within a reasonable time not to exceed 180 days from the date of the Court's order;

B.  Award Mr. M'Bareck reasonable costs and expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

C.  Grant any other relief that the Court deems just and proper.

Dated: August 17, 2021

                                              Respectfully submitted,

                                              By: _____

Arkansas Immigration Defense
4024 Wagon Wheel Rd.
Springdale, AR 72762

Stephen Coger, Ark. Bar No. 2015197
Phone: (479) 259-2487
Email: director@arkansaslaw.org

Matthew Bender, Ark. Bar No. 2014105
Phone: (479) 200-3497
Email: mlbende@uark.edu

## CERTIFICATE OF SERVICE

    I, Matthew Bender, do hereby certify that on this 17th day of August, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to all parties of record.

                                              _/s/ Matthew Bender_____
                                              Attorney for Plaintiff